## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 30 2017, 8:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Majorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David L. Moses,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 30, 2017

Court of Appeals Case No.
31A01-1604-CR-715

Appeal from the Harrison Superior Court

The Honorable Joseph L. Claypool, Judge

Trial Court Cause No.
31D01-0306-FA-457

**Mathias, Judge.**

[1] David Moses ("Moses") appeals the order of the Harrison Superior Court revoking his probation, arguing that the evidence was insufficient to support the trial court's decision to revoke his probation.

[2] We affirm.

## Facts and Procedural History

[3] In 2003, Moses pleaded guilty to Class A felony child molesting. He was sentenced to thirty years, with twenty-five years executed and five years suspended to probation, and with credit for time served. On June 17, 2015, Moses was released from incarceration and reported to probation. One of the conditions of Moses's probation was the following:

> You shall attend, comply with all rules of, and successfully complete treatment for sex offenders as directed by the Probation Officer. The sex offender treatment provider must be approved by the Probation Officer. Prompt payment of any fees is your responsibility and you must maintain steady progress toward all treatment goals.

Appellant's App. p. 7.

[4] Shortly after Moses was released to probation, he moved to Marion County. The probation officer in Marion County gave Moses a list of three places where he could receive his required sex-offender treatment. Because he lived close to downtown Indianapolis, Moses chose to go to the Indianapolis Counsel Center ("ICC").

[5] At ICC, Moses met with counselor Denise Ackerman ("Ackerman") for his initial evaluation. Moses did not have a positive attitude about the treatment, and told Ackerman, "I'm here to jump through hoops. I told them I would do and say whatever you want." Appellant's App. p. 10. He also told Ackerman that he had few possessions because he anticipated being sent back to prison. When asked if he had any mental health issues, Moses replied, "not yet," and stated, "I thought about seeing the psych doc so he could pump me full of all those drugs and make me like a zombie for the next five years." *Id.* at 17. Ackerman described Moses as being sarcastic and disrespectful. When Ackerman asked Moses about his victim's allegation that he had molested her at least ten times, Moses grew angry and stated, "Maybe I should go back to Harrison County and confront her myself." *Id.* at 11. When read the list of ICC clients' rights, he stated, "So next time I come here for one of these scheduled groups, I can bring my attorney with me, right?" *Id.* at 18.

[6] Due to Moses's attitude and behavior, and his threat to bring an attorney to therapy, Ackerman concluded that Moses did not want treatment and was not an appropriate candidate for services. Ackerman concluded that Moses "should be referred to another agency for sex offender treatment. He may also need a mental health evaluation to determine if there are any underlying factors contributing to his current state." *Id.* at 19.

[7] On September 15, 2015, the State filed a petition to revoke Moses's probation, alleging that Moses "failed to comply with sex offender treatment as directed by Probation." *Id.* at 7. The trial court held a hearing on the matter on January 4,

2016, finding that Moses had violated his probation and therefore revoked Moses's probation. The court ordered Moses to serve the remaining five-year balance of his executed sentence. Moses now appeals.

## Probation Revocation Standard of Review

Our courts have long noted that probation is an alternative to incarceration and is granted in the sole discretion of the trial court. *Davis v. State*, 743 N.E.2d 793, 794 (Ind. Ct. App. 2001), *trans. denied*. Accordingly, a defendant is not entitled to serve a sentence on probation; instead, probation is a matter of grace and a conditional liberty that is a favor, not a right. *Id*.

The revocation of probation is a two-step process. *Cox v. State*, 850 N.E.2d 485, 488 (Ind. Ct. App. 2006). First, the court must make a factual determination that a violation of probation has occurred. *Id*. Where a probationer admits to the violation, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation. *Id*.

Upon revocation of probation, a trial court may impose one or more of the following sanctions: (1) continue the person on probation, with or without modifying or enlarging the conditions; (2) extend the person's probationary period for not more than one year beyond the original probationary period; or (3) order execution of all or part of the sentence that was suspended at the time of initial sentencing. *Alford v. State*, 965 N.E.2d 133, 135 (Ind. Ct. App. 2012) (citing Ind. Code § 35-38-2-3(h)(1)–(3)).

We review a trial court's sentencing decision following a probation violation for an abuse of discretion. *Alford*, 965 N.E.2d at 135 (citing *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*.

## Discussion and Decision

Moses argues that the State presented no evidence that he failed to comply with the required sex offender treatment as directed by his probation officer. Moses acknowledges that the State presented evidence that he was angry, sarcastic, resistant, and disrespectful, but argues that this does not amount to proof that he failed to comply with the treatment.

In support of his argument, Moses relies upon the opinion of this court in *Mateyko v. State,* 901 N.E.2d 554 (Ind. Ct. App. 2009). In that case, the defendant's probation included a requirement that he "attend, actively participate in and successfully complete a court-approved sex offender treatment program as directed by the court or probation." *Id*. at 559. This condition also provided that "[u]nsuccessful termination from treatment or noncompliance with other required behavioral management requirements will be considered a violation of your probation." *Id*. When Mateyko attended the court-ordered therapy, he became agitated with the therapist, stood up, and used vulgar language toward her. Specifically, he told her to "F* *k off," and stated, "You cannot take my f* *king kids away from me." *Id*. at 556. The

therapist then asked Mateyko to leave, and he did. *Id*. The therapist felt "unsafe" and she locked the doors to her office, but Mateyko remained outside a while. Based on this incident, Mateyko's probation was revoked, and he appealed.

[14] On appeal, we held that this evidence was *prima facie*[1] insufficient to support a revocation of Mateyko's probation. *Id*. 559. In so doing, we noted that the testifying probation officer admitted that the therapist was incorrect when she told Mateyko that he could not have contact with his own children, which was specifically permitted under the terms of his plea agreement. *Id*. We also observed that this incident took place during Mateyko's first therapy session. *Id*. We therefore held that the evidence was insufficient to conclude that Mateyko failed to attend, actively participate in, and successfully complete his treatment program. *Id*.

[15] Moses argues that his case is indistinguishable from *Mateyko* and that we should therefore reverse the trial court's order revoking his probation. The State, however, claims that *Mateyko* is distinguishable in several respects. First, the State notes that, in *Mateyko*, no appellee's brief had been filed, and this court applied the less onerous *prima facie* error standard. The State also notes that Mateyko's therapist had incorrectly told him that he could not see his own children, which precipitated his outburst, whereas here there was no such

---

[1] Because the State did not file an appellee's brief in Mateyko's appeal, we applied the *prima facie* error standard of review. *See id*. at 557.

provocation. We believe the State has the better argument, and do not consider *Mateyko* to be controlling.

[16] Moses's behavior demonstrated a lack of a good-faith effort to cooperate with his therapist or participate in the court-ordered sex offender treatment. Moses's probation officer testified that, in her opinion, Moses had not made any effort to comply with the program and that sending Moses to another counseling agency was not a solution. Importantly, she stated that she would not refer Moses to another agency given his negative attitude.

[17] We further note that Moses appeared to be fatalistic regarding his return to prison, and his behavior during the appointment with his therapist demonstrated his lack of any intention to seriously participate in his required sex offender therapy. Accordingly, the trial court did not abuse its considerable discretion when it concluded that that Moses violated his probation by failing to comply with sex offender treatment as required by the terms of his probation.

[18] Affirmed.

Pyle, J., concurs.

Baker, J., dissents with opinion.

David L. Moses,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
31A01-1604-CR-715

**Baker, Judge, dissenting.**

Because I believe that the trial court has the authority to require Moses to attend and complete treatment for sex offenders, but does not have the authority to require him to be happy about it, I respectfully dissent.

I have two disagreements with the majority. First, I can find no meaningful distinction between the present case and *Mateyko*, 901 N.E.2d at 554. Indeed, as the majority notes, that defendant's conduct impeded or threatened to impede his therapist's attempt to treat him—he aggressively cursed, made her feel unsafe, and stood outside her office after she had locked the door to protect herself. *Id.* at 556. But despite the fact that the defendant actually hindered the provision of therapy, we reversed the revocation of his probation.

In contrast to the somewhat menacing behavior involved in *Mateyko*, Moses displayed nothing more than a mild cynicism towards the conditions of his

probation. There is no suggestion that Moses did not want to complete his therapy; his statement, "I'm here to jump through hoops. I told them I would do and say whatever you want," appellant's app. p. 10, while perhaps off-color, suggests the opposite. This case would be different if Ackerman's conclusion that Moses did not want treatment were based on more than a single meeting in which Moses acted less than happy to be attending. There is no evidence of Moses's inability to make progress because his therapist ended his therapy after one session. Indeed, this makes me question the therapist's skill and dedication far more than Moses's.

[22] Second, I find the majority's focus on Moses's supposed "fatalism" to be misplaced. Fatalism is an honorable philosophical stance, traces of which can be found in the traditions of ancient Greece, ancient Rome, Judaism, Christianity, Islam, Hinduism, Daoism, and many other religious and philosophical traditions. *See* Matt Stefon and Theodorus P. van Baaren, "Providence," *Encyclopaedia Britannica*, https://www.britannica.com/topic/Providence-theology. I would no more revoke Moses's probation for his "fatalism" than I would revoke the probation of a Christian for believing that he will remain a sinner or a Muslim for believing that the universe is willed by Allah.[2]

---

[2] I would also note that in determining that Moses could not be sent to another counseling agency, the probation officer exhibited more than a healthy share of fatalism herself.

Unless and until there is evidence in the record of Moses committing acts that hinder the provision of his therapy, or of a sustained failure to benefit from therapy such that he is unable to successfully complete the program, I do not believe his probation can be revoked. Many enter therapy doubtful of its efficacy; part of the job of a therapist is to convince the participant otherwise. Because that chance was not given to Moses, I would reverse.

For the foregoing reasons, I respectfully dissent.